**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**STEVEN ANDERSON**                                                                **PETITIONER**
Reg #04184-007

**VS.**                    **NO. 2:11-cv-00013-JLH-BD**

**T.C. OUTLAW, Warden,
Federal Correctional Complex,
Forrest City, Arkansas**                                             **RESPONDENT**

**RECOMMENDED DISPOSITION**

**I.**       **Procedure for Filing Objections**

The following recommended disposition has been sent to Chief United States District Judge J. Leon Holmes. Any party may file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommended Disposition. A copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

>   Clerk, United States District Court
>   Eastern District of Arkansas
>   600 West Capitol Avenue, Suite A149
>   Little Rock, AR 72201-3325

## II.   Introduction

Steven Anderson, an inmate at the Bureau of Prisons's ("BOP") Federal Correctional Complex in Forrest City, Arkansas, brings two claims in his petition for writ of habeas corpus under 28 U.S.C. § 2241.  First, he claims the BOP has instituted a "new rule" or "policy" regarding placement in a Residential Reentry Center ("RRC")[1] in violation of the Administrative Procedure Act ("APA").  Second, he claims the BOP failed to individually assess his eligibility for RRC placement and granted him only sixty days pre-release placement rather than the one year or 180-day placement he desired. (Docket entry #1 at p. 7)  Respondent has filed a response.  (#8)  For the reasons that follow, the Court recommends that the petition be dismissed.

## III.   Facts

The BOP completed an RRC Needs Assessment ("the Assessment") for Mr. Anderson reflecting a projected release date for Mr. Anderson of October 31, 2011.  (#8-1 at p.5)  In the Assessment, the BOP addressed the nature of Mr. Anderson's offense; community safety issues; job skills and prospects for employment; proposed residence;

---

[1] As of March 31, 2006, the BOP began referring to Community Correction Centers ("CCC") as Residential Reentry Centers.

and finances.  The Assessment notes that Mr. Anderson had completed a drug education course, was expected to complete a release preparation participation course, and had been approved for relocation to Maryland.  Mr. Anderson's case worker recommended he be placed in an RRC for 120 to 150 days prior to his release.  (#8-1 at p.5)  The Assessment and recommendation were forwarded to the Community Correction Manager who approved Mr. Anderson for sixty days of placement in an RRC.  (#8-1 at pp.2, 6)

IV.   **Analysis**

A.   *Exhaustion of Administrative Remedies*

Mr. Outlaw argues that Mr. Anderson failed to fully exhaust his administrative remedies.  Prisoners generally are required to exhaust their administrative remedies before filing a petition under 28 U.S.C. § 2241.  See *United States v. Chappel*, 208 F.3d 1069 (8th Cir. 2000).  However, exhaustion is not required if it would be futile.  *Thurman v. Sanders*, No. 2:06CV00114-SWW-HDY, 2006 WL 2372493 at *2 (E.D. Ark. Aug. 14, 2006) (citing *Ortiz v. Fleming*, 2004 WL 389076 (N.D. Texas 2004)).

Mr. Anderson admits that he has not exhausted his administrative remedies, but argues that, because his projected release date is less than ten months away, if he attempts to exhaust his administrative remedies, his claim will be moot before he completes the grievance process.  Clearly, Mr. Anderson has not fully exhausted his administrative remedies; however, because of the time limitations involved with his claim, the grievance process would be futile, and a discussion of the merits is warranted.

See *Lueth v. Beach*, 498 F.3d 795, 797 n. 3 (8th Cir. 2007), cert. denied, 128 S.Ct. 927 (2008) (addressing merits of federal prisoner's claims despite alleged failure to exhaust administrative remedies because the "exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional").

B.    *Administrative Procedure Act*

Mr. Anderson claims that the BOP used a "new policy" derived from a December 13, 2002 memorandum written by the Attorney General's Office of Legal Counsel ("OLC"). In the memorandum, the OLC concluded that a Community Correction Center was not a Penal or correctional facility" as described in 18 U.S.C. § 3621(b). Mr. Anderson states that, as a result of the 2002 OLC memorandum, the BOP "enacted a new policy which prohibits CCC transfers before a prisoner has remaining only 10 percent of his term of imprisonment." (#2 at p.6)

Mr. Anderson claims that the "new policy" resulted in a "stream of lawsuits," and that a majority of courts considering these lawsuits granted plaintiffs injunctive relief, finding that the BOP's "new policy" was enacted in violation of the Administrative Procedures Act ("APA"). (#2 at pp. 13-14) Mr. Anderson asks the Court to enter an injunction requiring the BOP to transfer him to a halfway house for the last 180 days of his sentence. (#1 at p.5) In support of his claim, Mr. Anderson cites to several district court cases from 2003. (#2 at pp. 13-14)

Mr. Anderson's argument describes a deficiency with the statutes, regulations, and policies of the BOP regarding RRC placement that existed in 2002 and 2003. A brief discussion of the history of the statutes, regulations, and BOP policies governing RRC placement reveals that the deficiency described by Mr. Anderson no longer exists.

Congress granted the BOP broad discretion to designate a place of imprisonment. Section 3621(b) of Chapter 18 of the United States Code, provides:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
>
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence....
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

Under 18 U.S.C. § 3624(c), the BOP is to give special attention to the housing assignments of inmates who are approaching the end of their sentences in order to help

them successfully return to society upon release. Prior to April 9, 2008, § 3624(c), provided, in relevant part:

> (c) Pre-release custody.-The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, *not to exceed six months, of the last ten per centum of the term to be served* under conditions that will afford the Prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c) (emphasis added), amended by 18 U.S.C. § 3624(c) (April 9, 2008).

In December 1998, the BOP issued Program Statement ("PS") 7310.04, entitled "Community Corrections Center (CCC) Utilization and Transfer Procedures." In *Miller v. Whitehead*, 527 F. 3d 752 (8th Cir. 2008), the Eighth Circuit outlined the history of the BOP's use of PS 7310.04 to determine an inmate's eligibility for placement in an RRC. The Court wrote:

> This program statement [7310.04] established a policy concerning when the BOP will place an inmate in a Residential Re-Entry Center ("RRC"), formerly known as a "Community Confinement Center." The statement opined that an RRC is a "penal or correctional facility" within the meaning of § 3621(b), and implicitly assumed that an RRC also is a "place of imprisonment." The statement reasoned that § 3624(c) did not restrict the use of RRCs to the last ten percent of the inmate's term, because § 3621(b) allows the BOP generally to "designate any available penal or correctional facility." It proceeded to explain that a decision on RRC placement "normally" should be made "no later than 11 to 13 months before an inmate's projected release date." The statement also includes guidelines for an RRC referral, including that "[a]n inmate may be referred up to 180 days, with placement beyond 180 days highly unusual, and only possible with extraordinary justification."
>
> In 2002, the BOP abandoned this program statement, and determined that an inmate was eligible for placement in an RRC only during the last ten

percent of the inmate's term of imprisonment. See 28 C.F.R. § 570.21. In *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004), the BOP defended its new policy on the ground that § 3624(c) limits the BOP's transfer authority under § 3621(b) to the last ten percent of the prisoner's term.FN3 *Elwood* rejected this argument, holding that § 3624(c) requires the BOP, when practicable, to transfer a prisoner to an RRC for a reasonable part of the last ten percent of his sentence, not to exceed six months, but that § 3624(c) does not forbid the BOP from designating a prisoner to an RRC for more than ten percent of his sentence pursuant to its authority under § 3621(b). *Id*. at 846-47.

> FN3. The new policy was adopted after the Department of Justice concluded that an RRC is not a "place of imprisonment" for purposes of § 3621(b). See Office of Legal Counsel, U.S. Department of Justice, Bureau of Prisons Practice of Placing in Community Confinement Certain Offenders Who Have Received Sentences of Imprisonment, 2002 WL 31940146, at *5 & n. 6 (Dec. 13, 2002). The BOP conceded in *Elwood*, however, that an RRC is a place of imprisonment, and we assumed the point for purposes of analysis. 386 F.3d at 846.

In response to our decision in *Elwood*, and a similar decision from the First Circuit, *Goldings v. Winn*, 383 F.3d 17 (1st Cir. 2004), the BOP adopted new regulations in February 2005. Under these regulations, the BOP again strictly limited transfers to RRCs to the last ten percent of a prisoner's term, but did so as a categorical exercise of its discretion under § 3621(b). 28 C.F.R. §§ 570.20-21. This regulation was challenged in *Fults v. Sanders*, 442 F.3d 1088, 1089 (8th Cir. 2006), and a divided panel held that the regulation was "contrary to the statute's unambiguous language," *id*. at 1090, because § "3621(b) requires that discretion be exercised on an individual basis." *Id*. at 1092.

In response to *Fults*, the BOP instructed officials at the Yankton facility to act in accordance with PS 7310.04, thus bringing its RRC placement policy full circle. As before, PS 7310.04 provided that the BOP "normally" would make a decision on RRC placement 11 to 13 months before a prisoner's projected release date, and that RRC placements for longer than 180 days are possible only with "extraordinary justification."

*Miller*, 527 F.3d at 754 -755 (8th Cir. 2008)(holding the extraordinary justification requirement in PS 7310.04 is not contrary to 18 U.S.C. § 3621(b)).

Differences of opinion among the circuits were ultimately resolved by the Second Chance Act of 2007, which amended 18 U.S.C. § 3624(c), effective April 9, 2008.[2] Section 3624(c) now provides, in relevant part:

> (1) In General. The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months ), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
> * * *
> (4) No limitations.-Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.
> * * *
> (6) Issuance of Regulations. The Director of the BOP shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the BOP is
> (A) conducted in a manner consistent with section 3621(b) of this title;
> (B) determined on an individual basis; and
> (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c)(1), (c)(4), (c)(6). As before, § 3624(c) provides the BOP with discretion to determine whether and how long an inmate should spend in an RRC before

---

[2] The Eighth Circuit Court of Appeals decided *Miller* after the enactment of the Second Chance Act, but the decision related to the BOP's RRC policy prior to the Act.

8

release, so long as the pre-release placement is practicable and the BOP considers the factors set forth in § 3621(b).

Accordingly, the "new policy" that Mr. Anderson refers to (used by the BOP in 2003 and limited the BOP's transfer authority under § 3621(b) to the last ten percent of the prisoner's sentence) is no longer used by the BOP to determine eligibility for RRC placement. There is nothing in the record to suggest that the BOP failed to use the current BOP policy when it assessed Mr. Anderson's eligibility for placement in an RRC.

The BOP's current policy is to make individual decisions about RRC placement based on the statute, as amended by the Second Chance Act, PS 7310.04, and guidance provided by an April 14, 2008 memorandum. The memorandum explicitly provides that BOP staff must approach every inmate's assessment individually, using the five criteria listed in 18 U.S.C. § 3621(b).

Further, PS 7310.04 and the April 14, 2008 memorandum are internal agency guidelines that do not trigger the procedural requirements of the APA. See *Hewitt v. B.R. Jett*, 2010 WL 1417654 at * 8 (D.Minn. March 15, 2010)(holding that the BOP's April 14, 2008, guidance memorandum is an internal guideline that is not subject to the Administrative Procedure Act); *Stanciel v. Holinka*, 2008 WL 304889 at *3 n. 3 (D.Minn., January 31, 2008)(holding the BOP's Program Statements are an internal guideline, not published regulations subject to the rigors of the APA); see also *Sacora v. Thomas*, 628 F.3d 1059 (9th Cir. 2010)(holding that Program Statement 7310. 04 and the

April 14, 2008 memorandum are not subject to the notice and comment requirements of the APA); *McGee v. Thomas*, 2009 WL 2182385, at *9 (D.Or. July 22, 2009)(holding that the BOP's April 14, 2008 memorandum and program statement 7310.04 are internal agency guidelines that do not trigger the procedural requirements of 5 U.S.C. § 553). Accordingly, Mr. Anderson's argument that the BOP's policy violates the APA must fail.

C.   *Residential Reentry Center Placement*

Mr. Anderson also claims the BOP failed to conduct an individualized assessment of his RRC placement needs. (#2 at p.7) Documents provided by Mr. Outlaw, however, undercut Mr. Anderson's claim.

When determining RRC placement, the BOP is required only to consider the request "in good faith." *Miller v. Whitehead*, 527 F.3d 752, 758 (8th Cir. 2008) (quoting *Fults v. Sanders*, 442 F.3d 1088, 1089 (8th Cir. 2006)). The BOP retains broad discretion under 18 U.S.C. § 3621(b), and courts review the BOP's decisions for abuse of its "substantial discretion." *Fegans v. United States*, 506 F.3d 1101, 1102-1105 (8th Cir. 2007).

As set out above, the BOP's current policy is to make individual decisions about RRC placement based on the following factors: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement or recommendation by the sentencing

10

court; and (5) any relevant Sentencing Commission policy statement. See 18 U.S.C. § 3621(b)(1)-(5).

Here, the BOP's decision was based on its individual consideration of the factors identified in 18 U.S.C. § 3621(b). (#8-1 at pp. 5-6) While the responses on Mr. Anderson's Assessment form are brief, the BOP is not required to conduct a detailed analysis. *Miller*, 527 F.3d at 758. Petitioner has not established that the BOP abused its discretion when it determined that 60 days' placement in an RRC was appropriate for Mr. Anderson.

## V. Conclusion

For the reasons set out above, the Court recommends that Petitioner Steven Anderson's petition for writ of habeas corpus (#1) be denied, with prejudice.

DATED this 30th day of March, 2011.

_____
UNITED STATES MAGISTRATE JUDGE